UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BATH MARINE DRAFTSMEN ASSOCIATION, LOCAL 3999, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO,<br><br>Plaintiff,<br><br>v.<br><br>BATH IRON WORKS CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Docket No. 2:06-CV-94-GZS<br>)<br>)<br>)<br>)<br>) |

**ORDER REGARDING ARBITRATION AWARD**

Presently before the Court are the Motion for Judgment by Plaintiff Bath Marine Draftsmen Association, Local 3999, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO ("BMDA") (Docket #s 12 & 13) and the Motion for Judgment on Stipulated Record by Defendant Bath Iron Works Corporation ("BIW") (Docket # 14). Respectively, these motions argue that the February 20, 2006 Arbitration Award in favor of Defendant (Ex. B to Docket # 14) should be vacated or confirmed by this Court. Following the Court's suggestion (Docket # 11), the parties have chosen to submit their dispute regarding the Arbitration Award on a stipulated record. See Boston Five Cents Sav. Bank. v. Secretary of the Dep't of Housing & Urban Dev., 768 F.2d 5, 11-12 (1st Cir. 1985) (explaining that by submitting a stipulated record for decision the parties "allow[] the judge to decide any significant issues of material fact that he discovers").

As explained below, the Court hereby DENIES Plaintiffs' Motion (Docket #s 12 & 13) and GRANTS Defendants' Motion (Docket # 14).

1

**I.    STANDARD OF REVIEW**

The First Circuit has previously described challenges to an arbitration award in the labor-management context as "a steep uphill climb." Mercy Hospital, Inc. v. Massachusetts Nurses Ass'n, 429 F.3d 338, 343 (1st Cir. 2005). As the First Circuit has previously explained and the parties before the Court both acknowledge:

> [J]udicial review of an arbitration decision is extremely narrow and extraordinarily deferential. . . . A court cannot vacate an arbitral award as long as the arbitrator is even arguably construing the contract and acting within the scope of his authority. . . . In the end, the court's task is limited to determining if the arbitrator's interpretation of the contract is in any way plausible.

Providence Journal Co. v. Providence Newspaper Guild, 271 F.3d 16, 20 (1st Cir. 2001) (internal citations and quotations omitted). Nonetheless, "an arbitrator's decision is not entirely impervious to judicial oversight." Salem Hosp. v. Massachusetts Nurses Ass'n, 449 F.3d 234, 238 (1st Cir. 2006) (internal citations and quotations omitted). The First Circuit has held that "a court may review and set aside an arbitrator's decision only if the decision was: (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Local 1445, United Food & Commercial Workers Intern. Union, AFL-CIO v. Stop & Shop Companies, Inc., 776 F.2d 19, 21 (1st Cir. 1985) (citing Bettencourt v. Boston Edison Co., 560 F.2d 1045, 1050 (1st Cir. 1977)). Nonetheless, an arbitration award must be confirmed, if it "rests on a plausible interpretation of the underlying contract." Salem Hosp., 449 F.3d at 238.

Before proceeding to apply this deferential standard of review to the pending motions, the Court pauses to note the limited record presented. The parties have filed a

stipulated record of ten exhibits including: (1) the March 2001 Collective Bargaining Agreement ("CBA") (Ex. A to Docket # 14); (2) the February 20, 2006 Arbitration Award ("Arbitration Award") (Ex. B to Docket # 14); (3) BMDA's Post-Hearing Brief (Ex. C to Docket # 14); (4) BIW's Post-Hearing Brief (Ex. D to Docket # 14)l; (5) Arbitration Joint Exhibit 2, which is a July 13, 2004 Power Point presentation on the Raw Stock Material Process (Ex. E to Docket # 14); (6) Arbitration Joint Exhibit 3, which is a copy of the October 27, 2004 grievance (Ex. F to Docket # 14); (7) the December 17, 1998 Arbitration Award (Ex. G to Docket # 14); (8) Arbitration Union Exhibit 16, which is a BIW memo, dated October 16, 2002 (Ex. H to Docket # 14); (9) Arbitration Company Exhibit 7, which is a letter from BIW to BMDA, dated October 11, 2004 (Ex. I to Docket # 14); and (10) the Stipulation of No Transcript (Ex. J to Docket # 14).  This final exhibit explains that both sides agreed to waive the recording or transcription of the arbitration proceedings and notes that a total of fifty-five exhibits were admitted into evidence at the arbitration hearings, which were held over the course of five days.

In light of the fact that the Court has no transcript of the arbitration hearings and was only provided with approximately five of the fifty-five admitted exhibits, the Court's ability to review any factual conclusions of the Arbitrator is limited.  See Paper, Allied-Indus., Chem. and Energy Workers Int'l Union, Local 1-9, AFL-CIO, CLC v. S.D. Warren Co., 382 F. Supp. 2d 130, 139-41 (D. Me. 2005) (explaining that a party's challenge to an arbitration award must fail to the extent it requires a review of the record and only a truncated record is provided to the court).  Nonetheless, the stipulated record clearly is sufficient to allow for review of the plausibility of the Arbitrator's contract interpretation.

## II. BACKGROUND

For purposes of the pending motion, the Court provides only a very brief sketch of the relevant facts.

Defendant BIW builds ships for the United States Navy. This work involves not only the actual building of ships but also ship design and significant production planning. The present dispute involves only a portion of that latter process, known as the Raw Stock Process. "Raw Stock" refers to a category of fungible, standardized parts that are often used in the building process but which require some amount of customization (i.e., cutting, painting or other finishing) before they are ready to install. By way of example, a six foot length of one inch steel bar would be considered "raw stock" and would be obtained by BIW builders via the Raw Stock Process.

For purposes of the present dispute, the workers employed at BIW can be generally categorized into three groups: (1) designers and engineers; (2) production planners; and (3) builders. To the extent that they are represented by any union, designers and engineers are generally represented by Plaintiff BMDA. To the extent that they are represented by any union, production planners are generally represented by a different union, Local S7, IUMSWA, IAMAW ("Local 7"). Builders, to the extent they are represented by a union, belong to Local S6, IUMSWA, IAMAW ("Local 6"). Each of these three bargaining units is understandably concerned about preserving its own work jurisdiction; in other words, ensuring that work performed by their union members does not get assigned to members of another union.

As detailed in the Arbitration Decision, BIW has worked since 1997 to streamline its Raw Stock Process. (See Arbitration Award at 10-26.) Over the last decade, these

changes repeatedly have been the subject of grievances by Local 7 and BMDA, as each union has argued that it has work jurisdiction over various parts of the Raw Stock Process. Via this latest grievance, BMDA claimed that the 2004 changes to the Raw Stock Process violated its CBA; specifically citing Article XXI, which, in relevant part, generally restricts BIW from assigning non-BMDA personnel to complete "work normally performed by BMDA employees."[1]

Stripped to its essence, this latest dispute required the arbitrator to look at the CBA between BIW and BMDA as well as the BIW Raw Stock Process and determine where BMDA work "normally" ends and where Local 7 work begins. The parties agreed to submit the following questions to the arbitrator:

> Did the Employer violate the collective bargaining agreement by the Implementation of its current Raw Stock Material Process?
> If so, what shall be the remedy?
>
> (Arbitration Award at 4.)

The Arbitrator ultimately answered the first question in the negative and explained that:

> [T]he work at the final stage of the raw stock process, which is in dispute herein, is not protected by Article XXI. Thus, the Company remained free to assign that work to employees in the BMDA unit (as it sometimes did in the past); to the Local 7 unit (as it sometimes did in the past); or to some combination thereof. Since the Company's exercise of its discretion to assign that work to the Local 7 unit complied with Article IV and was not in violation of Article XXI, it does not matter whether the same result would have been justified or not under Article XXV.

(Arbitration Award at 45.) The Arbitrator went on to conclude,

> In short, under Article XXI, the "work normally performed" clause does not provide a jurisdictional exclusive to the BMDA for ancillary work that is not core design/engineering work and which has been performed by employees

---

[1] Article XXI lists a number of exceptions to this prohibition, however, the parties have consistently agreed that none of the exceptions is applicable to his case. (See CBA Art. XXI at p. 46.)

5

> in both [BMDA and Local 7]. Since the work is normally performed by employees in both units, there is overlapping jurisdiction for both groups.

(Arbitration Award at 49.)

### III.   DISCUSSION

In the Court's assessment, the two above-quoted passages as well as the entirety of the Arbitration Award make clear that the Arbitrator concluded that the Raw Stock Process work was essentially: (a) work that had been shared by two unions and (b) work that by its nature was not clearly design/engineering work. Thus, the Arbitrator considered both BIW practice as well as more general trade practice to determine what work qualified as work "normally performed by BMDA employees," in accordance with Article XXI of the CBA. Contrary to Plaintiff's argument, the Court does not believe that the consideration of trade practice, which the Arbitrator referred to as "core" design/engineer work, exceeded his authority or modified a term of the CBA. Rather, the Arbitration Award reflects reliance on two reasonable sources for construing "normally performed," a phrase left undefined by the CBA. Moreover, the Arbitrator's conclusion that Raw Stock Process work "normally performed by employees in both [BMDA and Local 7]" was not simply work "normally performed by BMDA" reflects a plausible reading of the CBA. (Arbitration Award at 49.)

Despite the Court's conclusion that the above-quoted passages of the Arbitration Award reflect a plausible and reasonable application of the Article XXI "work normally performed" clause, Plaintiff draws the Court's attention to other passages of the Arbitration Award that they believe reflect an implausible reading of the CBA. Specifically, the Arbitrator also stated:

6

> From my point of view, the critical point is not whether the mix was 50%-50%, or 90%-10% or 10%-90%. Rather the critical point is that in this one area of shipbuilding operation, responsibility for the post-design work order function has been within the shared responsibility of employees in both units.
> . . .
> [W]here, as with the type of work at issue herein, the dividing line between two units is gray, rather than black-and-white, the Employer would have the discretion to assign the work to employees in either unit. Thus, even if the mixture of past assignments was 90%-10% in favor of the BMDA unit, that would not mean that the Employer was obliged to continue that division of work or to refrain from making changes in the assignment.

(Arbitration Award at 48.) Plaintiff not only asserts that these passages reflect an implausible reading of the CBA but also insists that the Arbitrator was required to make a factual finding with respect to precisely how much Raw Stock Process work was performed by BMDA. The Court believes these arguments are distinct and addresses them separately.

Turning first to Plaintiff's claim that the Arbitrator was required to make a percentage finding as to how much Raw Stock process work had been assigned to and/or performed by BMDA in the past, the Court believes that the Arbitrator was not necessarily required to make such a finding in order to rule upon the grievance presented. Moreover, the minimal record presented to this Court does not allow the Court to find that such a factual finding could have or should have been made based on the entirety of the record before the Arbitrator. Quite simply, by failing to present the Court with a complete record of all of the information presented to the Arbitrator, Plaintiff waived review of allegedly incorrect or incomplete factual findings by the Arbitrator with respect to past BIW practice. See S.D. Warren, 382 F. Supp. 2d at 139-41.

Finally, the Court is left with Plaintiff's argument that the above-quoted passages reflect an implausible reading of the CBA. Undeniably, these passages suggest that the

7

Arbitrator would not have found the Raw Stock Process work in question to be work "normally performed" by BMDA "even if" it had previously been assigned to BMDA 90 percent of the time. (Arbitration Award at 48.) However, the Arbitration Award includes no finding that the Raw Stock Process work that forms the basis of BMDA's grievance was, in fact, performed by BMDA ninety percent of the time. Without such a finding, the Court must conclude that the Arbitrator's rather broad, hypothetical statements regarding the percentage of work assigned to BMDA versus Local 7 go beyond both the holding of the Arbitration Award and the specific grievance presented to the Arbitrator. Absent some indication that the Arbitrator in fact found that ninety percent of the work subject to the grievance was previously assigned to BMDA or that the arbitration record as a whole clearly required such a finding, there is simply no basis for vacating the Arbitration Award based only on what amounts to dicta regarding the outer limits of the Article XXI "work normally performed" clause.[2]

Ultimately, in considering past BIW practice, the Arbitrator concluded that the work that was the focus of the pending grievance had "sometimes . . . in the past" been assigned to and performed by BMDA and likewise had "sometimes . . . in the past" been assigned to and performed by Local 7. (Arbitration Award at 45.) Based on this factual finding and his additional consideration of trade practice for design/engineering work, the Arbitrator was within the realm of plausibility when he concluded that the work at issue was not "work normally performed by BMDA employees" subject to Article XXI protection.

---

[2] The Court expresses no opinion as to the general plausibility of concluding that any work that was performed by BMDA ninety percent of the time might nonetheless fall outside the Article XXI "work normally performed" clause.

**III.     CONCLUSION**

For the reasons stated herein, the Court hereby DENIES Plaintiff's Motion (Docket #s 12 & 13) and GRANTS Defendant's Motion (Docket # 14). As a result of these rulings, the Clerk is hereby directed to enter judgment in favor of Defendant in accordance with the February 20, 2006 Arbitration Award (Ex. B to Docket # 14).

SO ORDERED.

       /s/ George Z. Singal
United States Chief District Judge

Dated this 1st day of February 2007.